UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------

ZAPOLSKI / RUDD, LLC,

                       Plaintiff,

     -against-

THE SETAI GROUP, LLC, JOHN P. CONROY and
JONATHAN J. BREENE,

                       Defendants.
-----------------------------------------------------------

08 Civ. 5445 (AKH)

**AMENDED COMPLAINT**



      Plaintiff Zapolski/Rudd, LLC ("ZR" or "plaintiff"), as and for its Amended Complaint against defendants The Setai Group, LLC ("Setai"), John P. Conroy and Jonathan J. Breene (collectively "defendants") states as follows:

## NATURE OF ACTION

      1.     This action arises from defendants' breach of the terms of the parties' Settlement Agreement in the prior action, *Zapolski/Rudd LLC v. The Setai Group, LLC, et al.*, 06 Civ. 6353 (WHP)(AJP)(the "Prior Action"), a copy of which is attached as Exhibit A hereto.

## THE PARTIES

      2.     ZR is a limited liability company organized and existing under the laws of North Carolina, with its principal place of business located at 501 Washington Street, Durham, North Carolina 27701.

      3.     Setai is a limited liability company organized and existing under the laws of New York, with its principal place of business located at 405 Lexington Avenue, New York, New York 10174.

4. John P. Conroy is a principal of Setai and a resident and citizen of New York.

5. Jonathan J. Breene is a principal of Setai and a resident and citizen of Florida.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) in that there is complete diversity of citizenship between the parties and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

7. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(a) and (c) because Setai and Conroy are subject to personal jurisdiction in this District, and a substantial part of the events giving rise to the claims occurred within this District.

8. Venue and jurisdiction over this action which seeks enforcement of the Settlement Agreement is also proper in this Court as it expressly retained jurisdiction over enforcement of the Settlement Agreement. *See* Exhibit A, Civil Judgment (A.J. Peck, U.S.M.J.), entered November 7, 2007 ("This action is dismissed without prejudice and without costs, but the Court retains jurisdiction pursuant to the terms of the Settlement Agreement.").

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

9. Pursuant to the Letter Agreement entered into between ZR and Setai, ZR placed a $1 million deposit (the "Deposit") in escrow in connection with Setai's planned acquisition of a hotel property in Miami, Florida from sellers called the "Brodsky Group." The Letter Agreement is attached as Exhibit B hereto.

10. Setai's Purchase and Sale Agreement with the Brodsky Group is attached as Exhibit C hereto.

11. The Letter Agreement between ZR and Setai provides that ZR had the absolute right to terminate its involvement in the deal. Upon ZR's notice of termination, Setai had two choices: (i) Setai could decide to terminate its own involvement in the transaction and instruct the Brodsky Group to return the $1 million Deposit, which the Letter Agreement calls a "Termination Decision"; or (ii) Setai could decide to proceed with the acquisition without ZR and otherwise reimburse ZR from separate funds the $1 million Deposit, which the Letter Agreement calls a "Go Forward Decision."

12. In the event of a Termination Decision, the Letter Agreement obligated Setai to pay to ZR $500,000 by no later than 21 business days after the initial closing date of March 20, 2006, namely April 18, 2006. Upon payment of the $500,000, the parties would then jointly pursue the Brodsky Group for return of the $1 million Deposit, which they would equally share, thereby making ZR whole.

13. In the event of a Go Forward Decision, Setai was obligated to reimburse the full $1 million Deposit to ZR by April 18, 2006, and to also pay to ZR an additional $300,000 fee.

14. Most of Setai's payment obligations under the Letter Agreement were unconditionally guaranteed by Setai's principals Conroy and Breene pursuant to their personal Guarantees collectively attached as Exhibits D hereto.

15. On March 6, 2006, ZR timely provided notice to Setai of its election to terminate its involvement in the deal, thereby triggering Setai's obligation to make either a Termination Decision or a Go Forward Decision. A copy of the March 6, 2006 Notice

is attached as Exhibit E. Setai did neither. Instead, on May 22, 2006, Setai sent a letter to ZR stating that although it believed that the Brodsky Group failed to satisfy all of its obligations under the Purchase and Sale Agreement, Setai was otherwise attempting to broker a transaction between a new possible purchaser and the Brodsky Group. A copy of this letter is attached as Exhibit F.

16. On May 31, 2006, ZR sent defendants another default notice (Exhibit G hereto). On June 1, 2006, Setai sent the Brodsky Group a request for the return of the Deposit, but otherwise made clear that it remained committed to pursuing the transaction (Exhibit H hereto).

17. On August 21, 2006, ZR commenced the Prior Action against Setai and the Guarantors for breach of the Letter Agreement and the Guarantees.

18. On October 2, 2006, Setai commenced an action against the Brodsky Group for the return of the $1 million deposit in Florida State Court (the "Brodsky Litigation").

19. On November 7, 2007, the parties appeared before Magistrate Judge Peck for a Court Ordered Settlement Conference in the Prior Action.

20. With the assistance of the Court, the parties reached an agreement and settled the Prior Action pursuant to the terms of the Settlement Agreement which were recorded by the Court.

21. The Settlement Agreement obligated defendants to: (i) make installment and balloon payments to ZR of $570,000 plus 9% interest; and (ii) to deliver an additional $500,000 to ZR upon defendants' recovery of any sum from the Brodsky Group in connection with the Brodsky Litigation.

22. As for the first part of the settlement amount, the Settlement Agreement provides:

> The defendants will pay the sum of $570,000 plus interest on that amount from today forward at 9 percent interest on the following terms and with the following guarantees:
>
> $25,000 will be paid each month beginning on January 1, 2008, with the balance to be paid on or before October 31, 2008. The parties agree that a judgment will be entered immediately against the Setai Group's 40 Broad special-purpose entity, the formal corporate name of which is SG 40 Broad LLC, in the amount of $1 million. All these amounts are plus interest at 9 percent from today forward. Setai Group LLC will sign a confession of judgment to be held in escrow by Mr. Lesser as counsel for plaintiff in the amount of $1 million plus interest, and the individual guarantors, Mr. Conroy and Mr. Breene, will sign confessions of judgment for $570,000 plus further interest.
>
> In the event of the failure to pay any of the $25,000 monthly payments or the failure to pay the final balloon payment on October 31, 2008, that will bring all payments up to the amount of $570,000 plus the 9 percent interest, then all amounts due and outstanding up to the sum of $1 million minus amounts already paid plus interest will be immediately due and owing, provided, however, that in the event of any of the $25,000 payments is not made on the first of each month starting January 1, 2008 and when such days are, as it is on January 1, on a holiday or weekend, the next business day, plaintiffs shall give defendants notice and a three-day opportunity to cure said default. Failure to cure any such default means that the entire $1 million plus interest balance is then due and owing. The parties further agree that in the event of any failure to pay the full sum, whether by acceleration or through the October 31, 2008, date, plaintiff shall be entitled to attorney's fees for the costs of attorney's fees and costs for the cost of collecting the amounts due.

23. Defendants delivered the required Affidavits in Support of Confession of Judgment to ZR, copies of which are collectively attached as Exhibit I.

**Defendants' Breach of the First Component Part of the Settlement Agreement**

24. Pursuant to the Settlement Agreement, Defendants' $25,000 monthly installment payments are due on the "first of each month." Defendants did not make such payments when due. Instead, ZR was forced to send Defendants' counsel written notice of their default for the months of January, February, April, May, and June, 2008. Only

5

after ZR transmitted these formal written Notices of Default, did Defendants make the required $25,000 installment payments within "the three-day cure period. Copies of these Notices of Default are attached as Exhibit J.

25. With respect to the July installment payment, however, Defendants did not timely cure their default. On July 2, 2008, ZR transmitted its Notice of Default to Defendants of their failure to timely make the July 1, 2008 $25,000 installment payment, a copy of which is attached as Exhibit K.

26. Pursuant to the Settlement Agreement, the three-day cure period ran on July 5, 2008. Defendants made the installment payment on July 11, 2008, six days after the 3-day cure period expired.

**Defendants' Breach of the Second Component Part of the Settlement Agreement**

27. With respect to the second part of the settlement amount – any money defendants obtain from the Brodsky Group in connection with the Brodsky Litigation – the Settlement Agreement provides:

> In the event that defendant Setai Group collects any of the $1 million deposit from the Brodsky entity, it will pay $500,000 of that immediately, within 21 days as called for by the letter agreement to the plaintiff, and that will reduce the $1 million amount at issue. In the event that that is not collected before October 31, 2008, then the parties shall have their respective rights against each other pursuant to the letter agreement of January 17, 2006, Exhibit B to the complaint.
>
> The parties further agree that this case will be dismissed without prejudice and that in the event all payments are made but the additional $500,000 due to the plaintiff from the Brodsky lawsuit, that there is a tolling agreement from now until 60 days after October 31, which I guess gets us to December 31, 2008, such that any claims any of the parties here may have against each other in connection with that Brodsky million dollar deposit, half of which is to be due to plaintiff, that will enable the plaintiff to bring a further action against the Setai Group, Conroy, and/or Breene pursuant to the letter agreement, Exhibit B to the complaint.

6

The parties further agree that the letter agreement, Exhibit B to the complaint, is modified to the extent of the paragraph under "Pursuit of Deposit" on page 2, eliminating the last line of that sentence, the line that currently reads "and share the cost of such pursuit on a 50/50 basis," it being understood that defendants will be solely responsible for the cost of the pursuit of the Brodsky group, but that all other rights and obligations as between Zapolski/Rudd and Setai Group remain pursuant to that letter agreement.

28.  This provision requires that in the event defendants collect any of the $1 million Deposit from the Brodsky Group, defendants are then obligated to immediately deliver $500,000 of that amount to ZR. The Settlement Agreement further provides that defendants are solely responsible for the cost of the pursuit of the return of the $1 million Deposit from the Brodsky Group.

29.  On April 11, 2008, defendants and the Brodsky Group agreed to settle the Brodsky Litigation for $375,000, payment for which was received by defendants' Florida counsel, Mitrani Rynor & Adamsky, P.A. ("Mitrani"), on April 18, 2008.

30.  Defendants settled for only 37.5¢ on the dollar because of the Brodsky Group's evidence that defendants waived their right to pursue recovery of the $1 million Deposit. This evidence included the transcript of a voice mail message dated June 1, 2006 from defendants' representative Kevin Fallon to the Brodsky Group's representative (Exhibit L hereto), which states:

> Hey Ken, it's Kevin Fallon from Setai Group. Ah I don't know if John told you I think he did tell you that we were going to be sending you a letter today asking for a return of the deposit. [I] just wanted to touch base with you letting you know that [it] was coming. And I'm sure John explained it to you that it you know [it is] not really so much from us [] or at all from us as it is from [Z&R] who is you know breathing down our necks and forcing us to send the letter because we are the party to the contract as is the case rather than having a [joint venture] that is a party to the contract so [] we are sending that letter sort of on behalf of [Z&R] so don't take it the wrong way, but we sort of have to send it to prevent [Z&R] from taking action against us so I'm going to fire that off by e-mail

now and I'll send it by hard copy as well. But ah any questions please do give me a call.

31.    While defendants' business decision to settle the Brodsky Litigation for only $375,000 was their own to make, because it was for less than $500,000, the entire $375,000 amount must be paid over to ZR pursuant to the Settlement Agreement which provides that: "[i]n the event that defendant Setai Group collects any of the $1 million deposit from the Brodsky entity, it will pay $500,000 of that immediately, within 21 days as called for by the letter agreement to the plaintiff [ZR], and that will reduce the $1 million amount at issue."

32.    Nonetheless, on April 16, 2008, Mitrani filed a "charging lien" of $156,904.84 against the $375,000 Brodsky Group settlement payment.

33.    After being informed of this "charging lien," ZR requested assurances from defendants that the full $375,000 would be paid over to ZR notwithstanding Mitrani's "charging lien."

34.    Defendants initially refused to provide such assurances, and instead indicated that ZR had no right to object to the amount of defendants' settlement with the Brodsky Group, nor to defendants' plan to pay Mitrani's outstanding legal bills of $156,904.84 from the $375,000 settlement proceeds.

35.    However, by making the business decision to settle with the Brodsky Group for less than the $500,000, defendants foreclosed the ability to deduct any portion of their legal fees from the $375,000 settlement proceeds because the Settlement Agreement expressly provides that: "Defendants will be solely responsible for the cost of the pursuit of the Brodsky Group."

36. Defendants have since indicated that they intend to discharge Mitrani's "charging lien," and deliver the $375,000 to ZR, but they have refused to provide any assurances as to when such funds will be delivered to ZR.

37. Pursuant to the Settlement Agreement, defendants had 21 days to deliver the $375,000 settlement proceeds to ZR upon receipt of such funds from the Brodsky Group.

38. As defendants' counsel Mitrani received and deposited the $375,000 payment on April 18, 2008, defendants' 21-day period to delivery such funds to ZR ran on Friday, May 9, 2008.

39. Defendants did not make the required payment to ZR, nor have they indicated when such payment will be made, thereby forcing plaintiff to pursue enforcement of the Settlement Agreement.

## FIRST CAUSE OF ACTION
(Breach of the Settlement Agreement – Installment Payments)

40. Plaintiff repeats and realleges the allegations set forth above.

41. The Settlement Agreement is a binding and enforceable contract.

42. Plaintiff has performed all of its obligations under the Settlement Agreement.

43. The Settlement Agreement provides that with respect to the first part of the settlement amount:

> The defendants will pay the sum of $570,000 plus interest on that amount from today forward at 9 percent interest on the following terms and with the following guarantees:
>
> $25,000 will be paid each month beginning on January 1, 2008, with the balance to be paid on or before October 31, 2008. The parties agree that a judgment will be entered immediately against the Setai Group's 40 Broad special-purpose entity,

the formal corporate name of which is SG 40 Broad LLC, in the amount of $1 million. All these amounts are plus interest at 9 percent from today forward. Setai Group LLC will sign a confession of judgment to be held in escrow by Mr. Lesser as counsel for plaintiff in the amount of $1 million plus interest, and the individual guarantors, Mr. Conroy and Mr. Breene, will sign confessions of judgment for $570,000 plus further interest.

In the event of the failure to pay any of the $25,000 monthly payments or the failure to pay the final balloon payment on October 31, 2008, that will bring all payments up to the amount of $570,000 plus the 9 percent interest, then all amounts due and outstanding up to the sum of $1 million minus amounts already paid plus interest will be immediately due and owing, provided, however, that in the event of any of the $25,000 payments if not made on the first of each month starting January 1, 2008 and when such days are, as it is on January 1, on a holiday or weekend, the next business day, plaintiffs shall give defendants notice and a three-day opportunity to cure said default. Failure to cure any such default means that the entire $1 million plus interest balance is then due and owing. The parties further agree that in the event of any failure to pay the full sum, whether by acceleration or through the October 31, 2008, date, plaintiff shall be entitled to attorney's fees for the costs of attorney's fees and costs for the cost of collecting the amounts due.

44. Defendants did not make the required July installment payment when due on July 1, 2008.

45. On July 2, 2008, ZR transmitted its Notice of Default to defendants of their failure to timely make the July 1, 2008 $25,000 installment payment, a copy of which is attached as Exhibit K.

46. Defendants three-day cure period ran on July 5, 2008.

47. Defendants did not make the installment payment until July 11, 2008, six days after the 3-day cure period expired.

48. As a result of defendants' breach of the Settlement Agreement, "all amounts due and outstanding up to the sum of $1 million minus amounts already paid plus interest [are] immediately due and owing," as well as the attorney's fees and costs incurred in this action.

49. Thus, ZR is entitled to recover from defendants the amount $825,000 ($1 million minus the $175,000 in installment payments including the late July payment), plus interest from November 6, 2007, and the attorney's fees and costs incurred by ZR in this action.

## SECOND CAUSE OF ACTION
(Breach of the Settlement Agreement – the Proceeds From the Brodsky Settlement)

50. Plaintiff repeats and realleges the allegations set forth above.

51. The Settlement Agreement is a binding and enforceable contract.

52. Plaintiff has performed all of its obligations under the Settlement Agreement.

53. The Settlement Agreement provides that: "In the event that defendant Setai Group collects any of the $1 million deposit from the Brodsky [Group], it will pay $500,000 of that immediately, within 21 days as called for by the letter agreement to the plaintiff, and that will reduce the $1 million amount at issue."

54. The Settlement Agreement also provides that: "Defendants will be solely responsible for the cost of the pursuit of the Brodsky Group."

55. In breach of these provisions of the Settlement Agreement, defendants have failed to deliver to plaintiff the $375,000 in proceeds received from the Brodsky Group on April 18, 2008.

56. As a result of defendants' breach of the Settlement Agreement, plaintiff has been damaged in the amount of $375,000, exclusive of interest, costs, fees, and expenses.

## THIRD CAUSE OF ACTION
(Breach of the Letter Agreement)

57. Plaintiff repeats and realleges the allegations set forth above.

58. The Letter Agreement is a binding and enforceable contract.

59. Plaintiff has performed all of its obligations under the Letter Agreement.

60. On March 6, 2006, plaintiff timely provided notice to Setai of its election to terminate its involvement with the property acquisition, thus satisfying all conditions precedent to termination pursuant to the "ZR Termination Rights" paragraph of the Letter Agreement.

61. Once plaintiff issued its March 6, 2006 termination notice, Setai was obligated to make either a Termination Decision or Go Forward Decision.

62. Setai did neither.

63. On May 31, 2006, Z&R sent Setai a default notice (Exhibit G hereto). On June 1, 2006, defendants sent the Brodsky Group a request for the return of the Deposit, but otherwise made clear that it remained committed to pursuing the transaction (Exhibit H hereto).

64. Unbeknownst to plaintiff, defendants otherwise qualified the terms of its June 1, 2006 letter to the Brodsky Group by stating that the demand was only sent to avoid litigation from plaintiff, and implying that it would not actually be pursued.

65. By and through such conduct, defendants gave the Brodsky Group the ability to argue that defendants waived their right to secure return of the $1 million Deposit, which led the court in the Brodsky Litigation to deny defendants' motion for summary judgment for return of the $1 million Deposit.

66. As a result of defendants' deliberate decision to send mixed messages to the Brodsky Group, defendants forfeited their ability to obtain summary judgment against the Brodsky Group for the recovery of the $1 million Deposit.

67. The Court in the Brodsky Litigation expressly determined that an issue of fact was created by defendants' conduct and "mixed messages" that negated their right to obtain judgment as a matter of law on their claim for return of the $1 million Deposit.

68. Following the court's denial of defendants' motion for summary judgment in the Brodsky Litigation, defendants chose to settle the Brodsky Litigation for only $375,000.

69. Defendants' deliberate decision to send mixed messages to the Brodsky Group constituted a breach of the Letter Agreement which required defendants to pursue in good faith the immediate return of the $1 million Deposit on behalf of Z&R upon making a timely Termination Decision.

70. As a result of defendants' breach of the Letter Agreement, plaintiff has been damaged in the amount of $125,000 in addition to the damages caused by defendants' failure to timely remit the $375,000 as set forth in the First Cause of Action, exclusive of interest, costs, fees, and expenses.

## FOURTH CAUSE OF ACTION
(Declaratory Relief)

71. Plaintiff repeats and realleges the allegations set forth above.

72. An actual controversy exists between plaintiff and defendants.

73. Plaintiff seeks a declaration of defendants' breach of the Settlement Agreement, and permission to immediately file the Affidavits in Support of Confession of Judgment executed pursuant to the Settlement Agreement, and enter Judgment against

all three defendants for the full amounts confessed, in addition to interest, costs, and attorneys' fees as provided in the Settlement Agreement.

WHEREFORE, plaintiff Zapolski/Rudd, LLC demands Judgment against defendants The Setai Group, LLC, John P. Conroy and Jonathan J. Breene as follows:

(a) A declaration that defendants have breached the terms of the Settlement Agreement;

(b) Judgment against The Setai Group, LLC for the amount of $1 million, plus interest, costs, and attorneys fees as provided by the Settlement Agreement, less the amount installment payments defendants have made to date of Judgment;

(c) Judgment against John P. Conroy for the amount of $570,000, plus interest, costs, and attorneys fees as provided by the Settlement Agreement;

(d) Judgment against Jonathan J. Breene for the amount of $570,000, plus interest, costs, and attorneys fees as provided by the Settlement Agreement; and

(e) Such other and further relief the Court deems just and proper.

Dated: New York, New York
       July 15, 2008

SIMON-LESSER PC

By: _____
    Leonard F. Lesser, Esq.
    420 Lexington Avenue
    New York, New York 10170
    t: 212.599.5455
    f: 212.599.5459
    Attorneys for plaintiff Zapolski/Rudd, LLC